**UNITED STATES of America, Plaintiff,**

v.

**CAC–RAMSAY, INC. f/d/b/a Comprehensive American Care, Inc., Defendant.**

**No. 89–0881–CIV.**

United States District Court, S.D. Florida.

Aug. 23, 1990.

Robert P. Barnett, Coral Gables, Fla., Gabriel L. Imperato, Dykema Gossett, Fort Lauderdale, Fla., Robert Salcido, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Roger Howard, South Miami, Fla., Charles V. Senatore, Miami, Fla., for defendant.

**ORDER ENTITLING RELATORS TO SHARE IN THE RECOVERED PROCEEDS**

**BACKGROUND**

JAMES LAWRENCE KING, Chief Judge.

On June 16, 1987, the Department of Health and Human Services (HHS), Office of Inspector General (OIG), initiated a review of Comprehensive American Care (CAC), a Health Maintenance Organization, and its affiliated providers. Based on this review, HHS–OIG found that CAC and two of its affiliated providers had been accepting substantial overpayments from Medicare.

Under the False Claims Act, 31 U.S.C. §§ 3729–3733, as amended, Pub.L. 99–562, 100 Stat. 3153 (1986), any person who makes false claims leading to government overpayments "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages the Government sustains ..." 31 U.S.C. § 3729(a). In addition, the False Claims Act allows a private person, known as a relator, to initiate a civil action against a violator of 31 U.S.C. § 3729. This *qui tam* action is brought in the name of the government, and if the government proceeds with the action, the private person can receive up to 25 percent of the proceeds of the action or settlement of the claim. 31 U.S.C. § 3730(d)(1).

Although CAC was in violation of the False Claims Act, the government did not initiate a civil action pursuant to the Act. Instead, HHS–OIG notified Blue Cross and Blue Shield, Florida's Medicare carrier, and Blue Cross and Blue Shield informed HHS–OIG that it would proceed with collection efforts against the violators.

Rather than the government initiating the above-styled action, relators Leon Weinstein and Citizens United to Reduce and Block Federal Fraud initiated the action. Prior to filing the complaint, Weinstein was a Special Agent for HHS–OIG. Ever since the United States decided to join in with the relators and proceed with the action, the government has moved the court to dismiss the relators as plaintiffs. The government contends that because the action was based solely upon information Weinstein learned during his government employment, the relators have no right to share in the costs recovered by the government.

The court entered an order on February 9, 1990, which allowed the relators to remain in this suit for the limited purpose of making a claim for compensation at the time of final resolution. The case has since settled, and CAC has agreed to pay $160,-000 to the Treasurer of the United States. The United States has renewed its motion to dismiss the relators from this action, and relators have responded. With the issue now ripe for review, the court must decide whether the relators, by virtue of Weinstein's previous government employment, are prohibited by the False Claims Act from sharing in the $160,000 settlement. The court concludes that the relators are not so prohibited.

## ANALYSIS

The government specifically cites § 3730(e)(4) of the False Claims Act as prohibiting the relators from being involved in the settlement. This section provides the following:

(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

It is evident from reading § 3730(e)(4) that Congress intended to bar parasitic *qui tam* suits, that is, lawsuits based on public information. By allowing a relator to collect money for his role in a *qui tam* action, the government obviously hopes to encourage private persons to report incidents of fraud against the government. However, it will usually serve no purpose to reward a relator for bringing a *qui tam* action if the incident of fraud is already a matter of public knowledge by virtue of "public disclosure." In the present case, the government argues that "public disclosure" occurs when a former government employee uses government information to file a *qui tam* action.

Relator Weinstein's primary duties with HHS–OIG involved the investigation of Medicare fraud. Weinstein did not work on the CAC audit review, but he had previously investigated many similar Health Maintenance Organizations, and he suspected fraud. Weinstein acquired the CAC audit report, which confirmed his suspicion. However, the Office of Audit did not characterize the overpayments as false claims, but as billing for "medically unnecessary services." Hence the Office of Audit simply notified Blue Cross and Blue Shield that it should collect for the overpayments.

Until he retired, Weinstein, in a sworn affidavit, says that he attempted to convince his superiors to charge CAC with filing false claims, but no one was interested. Affidavit accompanying Relators' memorandum in opposition to the United States' motion to dismiss the complaint, at 5. After meeting continued resistance by his superiors up until the time of his exit interview, Weinstein ultimately decided to file a *qui tam* suit upon his retirement. Affidavit, at 6.

The United States argues that the court should hold, once a present or former government employee expropriates the government's work product, the information becomes "disclosed" to a member of the "public," because the person in the character or capacity of a private relator is a part of the public. Thus, the government argues, public disclosure bars the relators in the instant case from sharing in the settlement. The court, however, does not agree.

The False Claims Act was adopted in 1863, during the Civil War, to help decrease fraudulent claims against the government by suppliers of war goods. With the 1986 amendments, both Houses of Congress sought to enhance the government's ability to recover losses as a result of pervasive fraud against the government. S.Rep. No. 345, 99th Cong., 2d Sess. 1–2 (1986), U.S. Code Cong. & Admin.News 1986, pp. 5266–67; H.R.Rep. No. 660, 99th Cong., 2d Sess. 16 (1986). One measure deemed necessary was an increase in suits brought by individuals. S.Rep. at 2; H.R.Rep. at 23.

The Senate Committee on the Judiciary explained its desire to provide "*qui tam* plaintiffs with a more direct role not only in keeping abreast of the Government's efforts and protecting his financial stake, but also in acting as a check that the Government does not neglect evidence, cause unduly [sic] delay, or drop the false claims case without legitimate reason." S.Rep. at 25–26, U.S.Code Cong. & Admin. News 1986, at 5290–91. The House Committee on the Judiciary similarly expressed its concern "that there are instances in which the Government knew of the information that was the basis of the *qui tam* suit, but in which the Government took no action." H.R.Rep. at 22.

The False Claims Act allows any person to bring a *qui tam* action except for four classes of persons specifically excluded by § 3730(e). Present or former government employees are not specifically excluded, but as related earlier, the United States contends that government employees in general, and the relators specifically, are barred because of "public disclosure" under § 3730(e)(4). However, after reading the legislative history of the 1986 amendments, the court is not persuaded that the relators' suit was one of those intended to be barred by the "public disclosure" provision of § 3730(e)(4).

Ultimately, what appears to have happened in this case is, after seeing no effective action taken by the government, relators filed the suit. This appears to be exactly what Congress intended, regardless of whether the relator is a government employee or not. Congress could have chosen to specifically exclude present and/or former government employees from bringing a *qui tam* action, but Congress did not. The Eastern District of Virginia has likewise held that government employees may sue as relators. *Erickson ex rel. United States v. American Institute of Biological Sciences*, 716 F.Supp. 908 (E.D.Va.1989)

Until the 1986 amendments, government employees could not sue as relators because of the 1943 amendments to the Act.

In 1943, the Supreme Court, in *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), refused to bar a relator even though he brought no information of his own to the suit. The relator had allegedly merely copied a federal criminal indictment. Upset that such a parasitic action was allowed, Congress reacted swiftly with the 1943 amendments to the False Claims Act. The 1943 amendments provided that

> [t]he court shall have no jurisdiction to proceed with any [*qui tam*] action ... whenever ... such suit was based upon evidence or information in the possession of the United States or any agency, officer or employee thereof, at the time such suit was brought.

89 Cong.Rec. 10844 (1943). After 1943, it was plain that government employees could not bring *qui tam* suits under the False Claims Act. *Erickson*, 716 F.Supp. at 916.

However, following a decline in the use of *qui tam* suits as a weapon in fighting fraud against the government, the 1986 amendments sought to expand the *qui tam* provisions to "encourage more private enforcement suits." S.Rep. at 23, U.S.Code Cong. & Admin.News 1986, at 5288. Presently, the False Claims Act's language does not bar *qui tam* actions by government employees, and, indeed, the legislative history behind the 1986 amendments encourages such *qui tam* actions as the one filed by the relators in this case. The court does not find that a "public disclosure" of the type which would bar such a *qui tam* action occurred in the instant case. Thus, finding that the relators are not barred by the False Claims Act from taking part in the suit and that the $160,000 settlement may never have been reached but for the relators filing the *qui tam* action, the court holds that relators are entitled to share in the $160,000 settlement.

The False Claims Act would normally allow the relators to recover between 15% and 25% of the settlement, but § 3730(d)(1) indicates

> Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations ... in ... [an] audit ... the court may award such sums as it considers appropriate, but in no case more than 10% of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation.

The court finds that, although relators are not barred from recovery by virtue of a "public disclosure" under § 3730(e)(4), they are limited to a maximum of 10% of the settlement, according to § 3730(d)(1). The court finds that the suit was based primarily on disclosures, albeit not public, of specific information other than information provided by the relators on their own. In addition, as relators had only a minor role in the prosecution of the suit after it was originally filed, the court

ORDERS and ADJUDGES that relators shall receive 5% of the settlement, or $8,000.00. The court deems this sum to be a fair and reasonable amount in accordance with the Act. Relators are also entitled to receive an amount for reasonable expenses necessarily incurred, plus reasonable attorneys' fees and costs, pursuant to § 3730(d)(1).

DONE and ORDERED.