931 F.2d 1493
 59 USLW 2756, 37 Cont.Cas.Fed. (CCH) 76,114
 UNITED STATES of America, Plaintiff-Appellee, ex rel. Arthur
P. WILLIAMS, Qui Tam, Plaintiff-Appellant,
v.
NEC CORPORATION f/k/a Nippon Electric Co., NEC Overseas
Marketing Ltd. f/k/a NEC Overseas Market
Development Co. Ltd., Defendants.
 No. 89-3973.
 United States Court of Appeals,
Eleventh Circuit.
 May 29, 1991.
 
 John T. Murphy, Melbourne, Fla., Coralyn G. Goode, Arent, Fox, Kintner, Plotkin & Kahn, Edward S. Cowen, Gerald H. Werfel, Washington, D.C., for Williams.
 Gregory O'Duden, Kerry L. Adams, Cary P. Sklar, David F. Klein, Washington, D.C., amicus: NTEU.
 Kendell W. Wherry, Asst. U.S. Atty., Orlando, Fla., Joan E. Hartman, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before FAY and EDMONDSON, Circuit Judges, and GARZA*, Senior Circuit Judge.
 FAY, Circuit Judge:
 
 
 1
 This case presents the question of whether a government employee may file a qui tam action under the False Claims Act, 31 U.S.C. Secs. 3729-3733 (1988), based upon information acquired in the course of his government employment. Appellant Arthur P. Williams worked as an attorney for the United States Air Force. During the course of his employment with the government, Williams became aware of bidrigging on the part of a corporation seeking telecommunications contracts with the United States. When Williams filed a qui tam complaint, on behalf of the United States, against the corporation allegedly engaged in bidrigging, the United States moved to dismiss the complaint with prejudice to Williams. Maintaining that Williams acquired and developed the information that formed the basis of his complaint during the course of his employment with the Air Force, the United States argued that the False Claims Act jurisdictionally bars any suit by a government employee based upon information acquired in the course of his government employment. The district court granted the government's motion to dismiss for lack of subject matter jurisdiction. For the reasons that follow, we find that nothing in the False Claims Act prohibits a government employee from filing a qui tam action based upon information acquired while working for the government. Therefore, the dismissal of Williams's complaint by the district court was in error.
 
 I. Procedural History
 
 2
 Appellant Arthur P. Williams filed a qui tam complaint on March 30, 1989,[1] alleging that Appellee NEC Corporation and its wholly owned subsidiary ("NEC") violated the False Claims Act, 31 U.S.C. Secs. 3729-3733. More specifically, Williams's complaint alleged that NEC had engaged in bidrigging in order to obtain government contracts for telecommunications services at United States military bases in Japan. The government filed a Motion to Dismiss Williams's complaint[2] for lack of subject matter jurisdiction on May 4, 1989, maintaining that the False Claims Act contained a jurisdictional bar against suits brought by government employees based upon information acquired in the course of their government employment. The district court granted the government's Motion to Dismiss on May 12, 1989.[3] Williams appealed the dismissal on August 24, 1989.
 
 II. Factual Background
 
 3
 Arthur Williams worked as an attorney for the United States Air Force.[4] Williams was assigned as Chief of the Contracts Law Division, Fifth Air Force, with headquarters at Yokota Air Base, Japan. During the course of his employment with the government, Williams became aware of what his qui tam complaint alleged was bidrigging by NEC Corporation and its wholly owned subsidiary on telecommunications contracts submitted for bid by the United States Government. After investigating the bidding practices of NEC, Williams prepared a report analyzing bidding on telecommunications contracts and describing parallel bidding on those contracts.[5] He submitted a copy of the report to his supervising officer, Colonel William R. Elliott on December 12, 1988.[6]
 
 
 4
 Williams filed his qui tam complaint on March 8, 1989.[7] Pursuant to section 3730(d) of the False Claims Act, which allows the qui tam relator to share in a percentage of any recovery obtained in the qui tam suit, Williams seeks a personal recovery of a percentage of any damages to the United States which resulted from the alleged bidrigging.[8]
 
 III. The False Claims Act
 
 5
 "The False Claims Act 'prohibits false or fraudulent claims to government payment.' " United States ex rel. Weinberger v. Florida, 615 F.2d 1370, 1370 (5th Cir.1980) (quoting United States ex rel. Weinberger v. Equifax, Inc., 557 F.2d 456, 460 (5th Cir.1977), cert. denied, 434 U.S. 1035, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978)).[9] The Act was first passed by Congress in 1863, at the request of President Lincoln, in an effort to combat profiteering by Union Army suppliers during the Civil War. Erickson ex rel. United States v. American Inst. of Biological Sciences, 716 F.Supp. 908, 915 (E.D.Va.1989) (citing Act of March 2, 1863, c. 67 12 Stat. 696). The original version of the Act authorized District Attorneys (predecessors to United States Attorneys) to bring suit. Id. In addition, private persons ("relators") were empowered to bring suit under the Act, with the promise of a share of the damages recovered serving as incentive for such private enforcers. Id. "The purpose of the qui tam provision, then as now, was to aid in the effort to root out fraud against the government." Id. (footnote omitted). It has been noted that " '[t]he purpose of the qui tam provisions of the False Claims Act is to encourage private individuals who are aware of fraud being perpetrated against the Government to bring such information forward.' " United States ex rel. Dick v. Long Island Lighting Co., 912 F.2d 13, 18 (2nd Cir.1990) (quoting H.R.Rep. No. 660, 99th Cong., 2d Sess. 22 (1986)) (citing Senate Report at 14, 1986 U.S.Code Cong. & Admin.News 5279 (quoting testimony before Senate Judiciary Committee's Subcommittee on Administrative Practice and Procedure stating that the amended False Claims Act rewards those who "bring ... wrongdoing to light.")).
 
 
 6
 The language of the original False Claims Act permitted a private relator to initiate suit even though that private individual contributed nothing to the exposure of the fraud alleged. See United States ex rel. Stinson v. Provident Life & Accident Ins., 721 F.Supp. 1247, 1249 (S.D.Fla.1989). In the late 1930's, however, numerous "parasitical suits" were filed in which the relator sued upon information copied from government files and indictments. Id. (citation omitted). Following a ruling by the Supreme Court that the False Claims Act did not specifically prohibit suits brought by relators who obtained their information from government indictments and contributed nothing to the discovery of the fraud alleged, see United States ex rel. Marcus v. Hess, 317 U.S. 537, 545-48, 63 S.Ct. 379, 384-86, 87 L.Ed. 443 (1943), Congress amended the Act in 1943.
 
 
 7
 Following the Supreme Court's decision in Hess, "[t]he immediate concern of Congress was to do away with these so-called 'parasitical suits.' " Pettis ex rel. United States v. Morrisson-Knudsen Co., 577 F.2d 668, 671 (9th Cir.1978) (citing United States v. Pittman, 151 F.2d 851, 854 (5th Cir.1945), cert. denied, 328 U.S. 843, 66 S.Ct. 1022, 90 L.Ed. 1617 (1946); United States v. Rippetoe, 178 F.2d 735, 736 (4th Cir.1949)). As a result, the 1943 Act contained a broad jurisdictional bar against qui tam suits "whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought." 31 U.S.C. Sec. 232(C) (Supp. III 1943), 57 Stat. 608 (1943). "Although Congress's immediate concern in enacting the 1943 amendment was to do away with the 'parasitical suits' allowed by Hess, the language and effect of the 1943 amendment in fact is much broader." United States ex rel. Wisconsin v. Dean, 729 F.2d 1100, 1104 (7th Cir.1984). After 1943, therefore, government employees were effectively prohibited from bringing suit under the False Claims Act. United States v. CAC-Ramsay, Inc., 744 F.Supp. 1158, 1161 (S.D.Fla.1990); Erickson, 716 F.Supp. at 916.
 
 
 8
 In 1986, Congress once again amended the False Claims Act. "[F]ollowing a decline in the use of qui tam suits as a weapon in fighting fraud against the government, the 1986 amendments sought to expand the qui tam provisions to 'encourage more private enforcement suits.' " CAC-Ramsay, Inc., 744 F.Supp. at 1161 (quoting S.Rep. at 23, U.S.Code Cong. & Admin.News 1986, at 5288); see also United States ex rel. LaValley v. First Nat'l Bank, 707 F.Supp. 1351, 1355 (D.Mass.1988) ("The legislative history in both houses of Congress reveals a sense that fraud against the Government was apparently so rampant and difficult to identify that the Government could use all the help it could get from private citizens with knowledge of fraud."). Eliminating the language of the 1943 Act prohibiting any suit based upon information in possession of the government at the time suit was brought, the 1986 amendments instead grant any private "person" the right to bring a civil action under the Act, subject to four specific exceptions.[10]
 
 IV. Discussion
 
 9
 It is the jurisdictional requirements of the False Claims Act that are at issue here. We must determine whether the district court was correct in dismissing for lack of subject matter jurisdiction the qui tam suit filed by Williams which was based upon information that he developed while employed as an attorney for the United States Air Force. In so doing, we must also decide the broader question of whether the False Claims Act prohibits government employees from filing qui tam suits based upon information acquired in the course of their government employment. Because we are called upon to review the district court's interpretation of a statute, our review is de novo. Frio Ice, S.A. v. Sunfruit, Inc., 918 F.2d 154, 157 (11th Cir.1990); Keys Jet Ski, Inc. v. Kays, 893 F.2d 1225, 1227 (11th Cir.1990).
 
 
 10
 "[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Consumer Prod. Safety Comm'n v. GTE Sylvania, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); see also United States v. Rush, 874 F.2d 1513, 1514 (11th Cir.1989) (citations omitted). Unless the statutory language is ambiguous or would lead to absurd results, the plain meaning of the statute must control. Blue Cross & Blue Shield v. Weitz, 913 F.2d 1544, 1548 (11th Cir.1990); United States v. Kattan-Kassin, 696 F.2d 893, 895 (11th Cir.1983). Thus, "[u]nless exceptional circumstances dictate otherwise, '[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete.' " Burlington N.R.R. v. Oklahoma Tax Comm'n, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (quoting Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 701-02, 66 L.Ed.2d 633 (1981)).
 
 
 11
 Where the statutory language is ambiguous, or application of the plain meaning of the statute would lead to absurd results, then a court may look to legislative history in an effort to determine the intent of Congress. Kattan-Kassin, 696 F.2d at 895. The plainer the statutory language, however, the more convincing contrary legislative history must be in order to support a reading of the statute which departs from its plain language. See Garcia v. United States, 469 U.S. 70, 75, 105 S.Ct. 479, 482-83, 83 L.Ed.2d 472 (1984) ("only the most extraordinary showing of contrary intentions ... would justify a limitation on the 'plain meaning' of the statutory language."); United States v. United States Steel Corp., 482 F.2d 439, 444 (7th Cir.), cert. denied, 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973). Thus, the party who seeks to convince a court to adopt a reading of a statute that is at odds with its plain meaning, labors under a heavy burden.
 
 
 12
 The United States maintains that the qui tam action brought by Williams was properly dismissed because a government employee is barred by section 3730(e)(4)(A) of the False Claims Act from bringing such an action. Section 3730(e)(4)(A) states,
 
 
 13
 (e) Certain Actions Barred.--
 
 
 14
 ....
 
 
 15
 (4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
 
 
 16
 31 U.S.C. Sec. 3730(e)(4)(A) (1988). The United States argues first, that Williams's qui tam action was based on information that was "publicly disclosed" within the meaning of section 3730(e)(4)(A). Secondly, the United States asserts that Williams was not an "original source" of the publicly disclosed information forming the basis of his suit, as that term is defined in section 3730(e)(4)(B) of the Act. In addition, the United States advances the more general proposition that the comprehensive bar against qui tam suits by government employees in the 1943 version of the False Claims Act was never repealed by the 1986 amendments to the Act. And finally, the United States offers several public policy reasons for finding that Congress intended to bar government employees from initiating qui tam suits based upon information acquired in the course of their government employment. For the reasons that follow, we disagree on all counts.
 
 A. Public Disclosure
 
 17
 The United States' argument that Williams's qui tam suit was based on the "public disclosure" of information under section 3730(e)(4)(A), relies on a characterization of government employees as occupying a dual status. According to the United States, as long as the government employee uses official information in his official capacity only, no public disclosure occurs. Brief for United States at 23-24. Once the government employee uses official information outside the scope of his employment, however, he "reverts to a status as a private member of the public." Id. at 24. Under the dual status theory, therefore, when the government employee uses official information as a private citizen, he has disclosed the information to himself so that a "public disclosure" occurs.
 
 
 18
 Notwithstanding the dubious logic of this dual status argument, it ignores the plain language of section 3730(e)(4)(A), which bars actions based upon information that is publicly disclosed only in certain enumerated instances. Under this section of the Act, actions are prohibited if "based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media." 31 U.S.C. Sec. 3730(e)(4)(A). As a preliminary matter, we find that the methods of "public disclosure" set forth in section 3730(e)(4)(A) are exclusive of the types of public disclosure that would defeat jurisdiction under that section. The list of methods of "public disclosure" is specific and is not qualified by words that would indicate that they are only examples of the types of "public disclosure" to which the jurisdictional bar would apply. Congress could easily have used "such as" or "for example" to indicate that its list was not exhaustive. Because it did not, however, we will not give the statute a broader effect than that which appears in its plain language.
 
 
 19
 The United States argues that even if the narrower reading of what constitutes "public disclosure" is adopted, Williams's qui tam action must still be barred because it was based upon information "publicly disclosed" in a government "investigation." Brief for United States at 24 n. 19. Once again, this argument ignores the plain language of the statute. Under section 3730(e)(4)(A), a qui tam action is barred only if based upon information disclosed in "a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation...." 31 U.S.C. Sec. 3730(e)(4)(A). A plain reading of this language reveals that "congressional, administrative, or Government Accounting Office" modifies "report, hearing, audit, or investigation." Any other reading of that phrase would be illogical. Because Williams's report on bidding practices was not issued by Congress, an administrative agency, or out of the Government Accounting Office, therefore, it is not a "public disclosure" within the meaning of section 3730(e)(4)(A).[11]
 
 
 20
 Because we find no "public disclosure" under section 3730(e)(4)(A), Williams's qui tam action is not jurisdictionally barred under that section. Therefore, we need not reach the question of whether Williams was an "original source" of the information that formed the basis of his suit. The "original source" inquiry only becomes necessary once a court makes a factual determination that the particular qui tam suit before it was based upon information that was publicly disclosed. See LaValley, 707 F.Supp. at 1366 (court declined to reach original source issue in light of its holding that the complaint before it was not " 'based upon a public disclosure' ") (quoting 31 U.S.C. Sec. 3730); see also United States ex rel. Stinson v. Blue Cross Blue Shield, 755 F.Supp. 1040, 1050 (S.D.Ga.1990) (where the court found that the suit was not based upon information publicly disclosed, it found it unnecessary to reach the question of whether the relator was an "original source").[12] In other words, "[s]ection 3730(e)(4)(A) only requires that the relator be an original source of the information in a public disclosure if the court finds that the relator's action was based upon that public disclosure." LaValley, 707 F.Supp. at 1367.[13]
 
 
 21
 In finding that Williams's qui tam action is not jurisdictionally barred by section 3730(e)(4)(A), we also hold that nothing in that section operates to preclude every government employee from bringing a qui tam action based upon information acquired in the course of his government employment. To be sure, a government employee, like any other relator, can be barred from bringing a qui tam action if that action is based upon "publicly disclosed" information and the employee is not an "original source" of that information. But section 3730(e)(4)(A) cannot be used to prohibit all government employees from bringing qui tam actions simply because those actions are based upon information acquired by the government employee in the course of his government employment.[14]
 
 
 22
 B. General Prohibition Against Government Employees
 
 
 23
 The United States also argues that the comprehensive bar against qui tam suits by government employees in the 1943 version of the False Claims Act was never repealed by the 1986 amendments to the Act. We do not agree. We can read no general prohibition against government employees as qui tam plaintiffs into the 1986 False Claims Act, as the United States would apparently have us do. The structure of the 1986 version of the Act and several basic canons of statutory interpretation make it clear that no such general prohibition any longer exists.
 
 
 24
 A straightforward reading of the 1986 False Claims Act reveals that Congress did not explicitly exclude government employees from the class of proper qui tam plaintiffs. See CAC-Ramsay, 744 F.Supp. at 1160 ("Congress could have chosen to specifically exclude present and/or former government employees from bringing a qui tam action, but Congress did not."); see also Erickson, 716 F.Supp. at 910 ("Congress chose to exclude from the class of permissible qui tam relators only limited groups of persons in certain, defined circumstances"). Furthermore, the structure of the False Claims Act is revealing in that it sets forth a right of any person to bring a qui tam action, and then specifically enumerates certain actions which are barred in section 3730(e). One district court has noted:
 
 
 25
 In defining the classes of persons eligible to bring qui tam actions, Congress had a choice: It could have chosen to make eligible as qui tam relators only certain defined groups of persons and exclude all others or it could have chosen to include all persons as eligible qui tam relators with certain specific exceptions. It chose the latter scheme. The statute first permits any "person" to bring a qui tam action, and then specifically excludes four groups.... Government employees are included in the general universe of permissible qui tam plaintiffs unless, in the particular circumstances, they fall into one of the four specifically defined excluded groups.
 
 
 26
 Erickson, 716 F.Supp. at 912, 913 (footnote omitted).
 
 
 27
 Furthermore, this circuit has noted that "[w]hen the legislature deletes certain language as it amends a statute, it generally indicates an intent to change the meaning of the statute." In re Request for Assistance, 848 F.2d 1151, 1154 (11th Cir.1988) (citations omitted), cert. denied sub nom. Azar v. Minister of Legal Affairs, 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989). Where, as here, the legislature deletes language that contained a general prohibition and replaces it with a grant of jurisdiction followed by certain enumerated exceptions, it is logical for a court to conclude that Congress intended to do away with the general prohibition.
 
 
 28
 It is also a generally recognized rule of statutory interpretation that a court should interpret a statute so as to give effect to each of its provisions. United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 519-20, 99 L.Ed. 615 (1955); United States v. Rawlings, 821 F.2d 1543, 1545 (11th Cir.), cert. denied, 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987). "[A]ny interpretation which renders parts or words in a statute inoperative or superfluous is to be avoided." Rawlings, 821 F.2d at 1545. To read the False Claims Act to prohibit government employees from initiating qui tam actions based upon information acquired in the course of their government employment, would render superfluous one of the four limits on jurisdiction in section 3730(e) of the Act. The first limit on jurisdiction states that "[n]o court shall have jurisdiction over an action brought by a former or present member of the armed forces under subsection (b) of this section against a member of the armed forces arising out of such person's service in the armed forces." 31 U.S.C. Sec. 3730(e)(1). This exclusion would clearly be unnecessary if, as the government contends, the Act contained a general exclusion against all government employees as qui tam plaintiffs.
 
 
 29
 In addition, where a statute explicitly enumerates certain exceptions to a general grant of power, courts should be reluctant to imply additional exceptions in the absence of a clear legislative intent to the contrary. See Andrus v. Glover Constr. Co., 446 U.S. 608, 616-17, 100 S.Ct. 1905, 1910-11, 64 L.Ed.2d 548 (1980). As the structure of the False Claims Act makes clear, Congress conferred jurisdiction over suits initiated by any "person" as a qui tam plaintiff, subject to four specific exceptions. We cannot infer an additional exception absent a clear indication by Congress that, notwithstanding the specificity with which it excluded certain classes of potential qui tam plaintiffs, it also meant to bar all government employees as relators. The United States has not presented evidence of such clear congressional intent.[15]
 
 C. Public Policy Arguments
 
 30
 The United States has offered several public policy reasons for finding that Congress intended to bar government employees from initiating qui tam suits based upon information acquired in the course of their government employment. The essence of the government's public policy arguments is that the False Claims Act should not allow a personal reward to government employees for the "parasitical" use of information obtained and developed in the course of government employment. More specifically, the United States maintains that a "parasitical" suit brought by a government employee based upon government information while a government investigation is under way will prematurely disclose the information in the possession of the government to the defendant, and thereby prejudice the government's case. In addition, the government warns of races to the courthouse in which government employees seek to file suit as private qui tam relators before the Attorney General can file suit on behalf of the United States. Such races, it asserts, would force the Attorney General "to file suits based on facts that are only in a preliminary stage of investigation, with corresponding disclosure to the potential defendant of the existence of the inquiry and undermining of the government's case." Brief for United States at 25. And finally, the United States asserts that government employees should not receive compensation via the False Claims Act for reporting fraud against the government when it is part of their duties as government employees to report such fraud notwithstanding the Act.
 
 
 31
 We recognize that the concerns articulated by the United States may be legitimate ones, and that the application of the False Claims Act since its 1986 amendment may have revealed difficulties in the administration of qui tam suits, particularly those brought by government employees.[16] Notwithstanding this recognition, however, we are charged only with interpreting the statute before us and not with amending it to eliminate administrative difficulties. The limits upon the judicial prerogative in interpreting statutory language were well articulated by the Supreme Court when it cautioned:
 
 
 32
 Legislation introducing a new system is at best empirical, and not infrequently administration reveals gaps or inadequacies of one sort or another that may call for amendatory legislation. But it is no warrant for extending a statute that experience may disclose that it should have been made more comprehensive. "The natural meaning of words cannot be displaced by reference to difficulties in administration." Commonwealth v. Grunseit, [ (1943) 67 C.L.R. 58, 80]. For the ultimate question is what has Congress commanded, when it has given no clue to its intentions except familiar English words and no hint by the draftsmen of the words that they meant to use them in any but an ordinary sense. The idea which is now sought to be read into the [Act] ... is not so complicated nor is English speech so poor that words were not easily available to express the idea or at least to suggest it.
 
 
 33
 Addison v. Holly Hill Fruit Prods., 322 U.S. 607, 617-18, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944). Congress could have certainly indicated its desire to prevent government employees from filing qui tam suits based upon information acquired in the course of their government employment.[17] See In re Davis, 911 F.2d 560, 562 (11th Cir.1990) (Observing that Congress was clearly "capable of drafting a statute which would [state explicitly what appellant argued was implied by legislative history], but it did not. We are a court and not a legislative body; therefore, we are not free to create by interpretation an exception in a statute which is plain on its face."); see also Rawlings, 821 F.2d at 1546 ("Congress, if it wished to do so, could have limited the statute in the manner suggested by appellant.... Congress was not so specific when drafting this statute. We must interpret the statute as it is written, not how appellant wishes Congress had drafted it."). The False Claims Act is devoid of any statutory language that indicates a jurisdictional bar against government employees as qui tam plaintiffs. We also note an absence of any clear indication that Congress intended such a bar to be implied in spite of the plain language of the statute. Therefore, we decline to judicially create an exception where none exists.
 
 V. Conclusion
 
 34
 For the reasons articulated above, we REVERSE the district court's dismissal for lack of subject matter jurisdiction with prejudice against Arthur P. Williams and REMAND for proceedings consistent with this opinion.
 
 
 
 *
 Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 Williams filed an ex parte application for leave to file the complaint in camera and under seal on March 9, 1989, in accordance with section 3730(b)(2) of the False Claims Act. On that same date, Williams served a copy of the complaint upon the United States Attorney for the Middle District of Florida and upon the Attorney General of the United States, as required by section 3730(b)(2) of the Act. As also required by the Act, Williams turned over to the Attorney General all "material evidence" in his possession relating to the allegations in the complaint. The district court granted leave to file the complaint in camera and under seal on March 30, 1989
 
 
 [2]
 The Motion to Dismiss specifically asked the court to dismiss the claim without prejudice to the United States, but with prejudice as to Williams
 
 
 [3]
 The district court's order granting the government's Motion to Dismiss was entered without allowing Williams time, as required by the Federal Rules of Civil Procedure, to reply to the government's motion. The district court corrected its order on June 7, 1989 to allow Williams an opportunity to brief the jurisdictional issue. Williams filed a brief on June 9, 1989 and made a Motion to Strike the government's Motion to Dismiss. On June 30, 1989, the district court denied Williams's Motion to Strike. Although Williams requested oral argument on the government's Motion to Dismiss, no hearing on the jurisdictional issue was ever held and the district court's denial was made without a written opinion and without any findings of fact
 
 
 [4]
 We note that Williams retired from his position with the government sometime after filing his qui tam complaint. The United States emphasizes the fact that Williams was employed by the government at the time his complaint was filed. For the purpose of our analysis, however, it does not appear to matter whether the qui tam plaintiff ("relator") is a government employee at the time he initiates suit. Rather the focus is upon the fact that the relator was at one time a government employee and that the information upon which the qui tam suit is based was acquired in the course of that government employment
 
 
 [5]
 There is some disagreement between the parties as to whether Williams's investigation and report were undertaken and prepared on "official time." The United States contends in its brief that Williams developed the information in his complaint and prepared his report on bidding practices on official time. The government maintains that,
 Williams' superior officer, Colonel Elliott, specifically asked Williams to prepare a report on the subject of bidrigging on U.S. contracts in Japan and encouraged him to continue to look into the issue and to use whatever official time was necessary on the project. Williams used official time as well as government resources to prepare the report, obtaining information for the report based upon his representation that he was requesting the information in his capacity as a government attorney.
 Brief for the United States, at 5 n. 5.
 Williams, on the other hand, maintains that his investigations were conducted during non-work hours, in the evenings and during weekends.
 
 
 [6]
 In addition, Williams sent copies of his report to three other individuals:
 (1) Major Nuney, Director of Contracting Center of Yokota Air Base, on or about January 10, 1989;
 (2) Lieutenant Colonel Robert Tepfer, Office of the Staff Judge Advocate, on or about January 4, 1989; and
 (3) Mr. James Dever, Office of the General Counsel, Department of the Air Force, Pentagon, on January 31, 1989.
 
 
 [7]
 Williams contends that when he first became suspicious about the award of contracts to NEC, he "discussed his suspicions with appropriate authorities within the Air Force whose job it was to handle fraud and related matters, and they indicated that they were not interested in pursuing the investigation." Brief of Appellant, at 3. Williams further maintains that when he presented the results of his investigation to his supervisor and the General Counsel of the Air Force, he was informed that no action would be taken either to investigate the bidrigging scheme further or against the alleged bidriggers. Id. at 4. It was only after the refusal of the Air Force to take action, argues Williams, that he decided to file a qui tam action
 The United States counters that the Air Force did not ignore Williams's allegations, but rather is presently "conducting an active ongoing investigation of the allegations of bidrigging." Brief for United States at 6. The United States maintains that,
 [T]wo weeks after receiving the report from Williams, on December 29, 1988, Colonel Elliott provided the completed report to the Office of Special Investigations (OSI), the Air Force office with the responsibility to investigate allegations of bidrigging on Air Force contracts. An OSI agent was assigned to the case on January 4, 1989. During the month of January, 1989, Williams met with the assigned OSI agent to review the allegations.
 Id. at 5 n. 5.
 We note that nothing in the False Claims Act requires that a private relator wait until the United States declines to initiate suit before filing his qui tam complaint. Williams complied with the procedural requirements of the Act, as set forth in section 3730(b)(2): Williams served a copy of the complaint and written disclosure of all material evidence and information he possessed on the United States Attorney for the Middle District of Florida and upon the Attorney General of the United States. In addition, Williams filed his complaint in camera and under seal.
 Although the United States at oral argument advanced several public policy justifications for a requirement that the private qui tam relator give the government an opportunity to file suit on its own behalf before that relator initiates a qui tam action on behalf of the government, nothing in the False Claims Act mandates such deference. Even if a government investigation was pending at the time Williams filed his qui tam complaint, such fact would not jurisdictionally bar Williams from initiating suit under the False Claims Act.
 
 
 [8]
 Section 3730(d) provides, in pertinent part:
 (d) Award To Qui Tam Plaintiff.--(1) If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action.... Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.
 (2) If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds. Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.
 31 U.S.C. Sec. 3730(d) (1988).
 Because the bidrigging scheme allegedly resulted in dollar losses to the United States in the tens of millions, Williams' percentage of any recovery in the suit stands to be quite significant.
 
 
 [9]
 The Eleventh Circuit in Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [10]
 The Act provides, in pertinent part:
 (e) Certain Actions Barred.--(1) No court shall have jurisdiction over an action brought by a former or present member of the armed forces under subsection (b) of this section against a member of the armed forces arising out of such person's service in the armed forces.
 (2)(A) No court shall have jurisdiction over an action brought under subsection (b) against a Member of Congress, a member of the judiciary, or a senior executive branch official if the action is based on evidence or information known to the Government when the action was brought.
 (B) For purposes of this paragraph, "senior executive branch official" means any officer or employee listed in section 201(f) of the Ethics in Government Act of 1978 (5 U.S.C.App.).
 (3) In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.
 (4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
 (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.
 31 U.S.C. Sec. 3730(e) (1988).
 
 
 [11]
 Even if Williams's investigation and report would qualify as the type of "public disclosure" described in section 3730(e)(4)(A), neither the investigation nor the report were ever disclosed to the "public" before Williams's qui tam suit was filed. We are left, then, with the dual status theory in order to find a "public disclosure" of the information contained in Williams's investigation and report. We simply cannot fathom the scenario suggested by the United States, wherein Williams-as-government-employee disclosed official information to Williams-as-private-citizen. We therefore reject the dual status argument. See United States ex rel. LeBlanc v. Raytheon Co., 913 F.2d 17, 20 (1st Cir.1990) (where court rejected district court's characterization of government employees as occupying a dual status, noting that it "requires the assumption that government employees lead schizophrenic lives and can publicly disclose information to themselves," and questioning whether such a "hypothesis" was "physically reasonable") (cert. denied, --- U.S. ----, 111 S.Ct. 1312, 113 L.Ed.2d 246 (1991); see also CAC-Ramsay, Inc., 744 F.Supp. at 1160 (court rejected government's argument that "once a present or former government employee expropriates the government's work product, the information becomes 'disclosed' to a member of the 'public,' because the person in the character or capacity of a private relator is a part of the public")
 
 
 [12]
 The phrasing of the issues under section 3730(e)(4)(A) by two district courts supports this reading of the jurisdictional bar and its exception. It has been explained that the "court must determine whether (1) there has been a public disclosure within the meaning of the statute; (2) if so, whether the relator 'based' his suit on the public disclosure; and (3) if so, whether the relator is 'an original source of the information.' "
 U.S. ex rel. Stinson et al. v. Prudential Ins., 736 F.Supp. 614, 617 (D.N.J.1990) (emphasis added); LaValley, 707 F.Supp. at 1366 (emphasis added).
 
 
 [13]
 In adopting this reading of the "original source" exception, we explicitly reject the reasoning of the First Circuit in United States ex rel. LeBlanc v. Raytheon Co., 913 F.2d 17 (supra, note 11). The district court in Raytheon dismissed the qui tam action at issue there on the ground that "[g]overnment employees are excluded by Sec. 3730(e)(4) of the False Claims Act." United States ex rel. LeBlanc v. Raytheon Co., 729 F.Supp. 170, 175 (D.Mass.1990). The district court concluded that a "public disclosure" within the meaning of the statute, occurs "whenever a government employee uses government information he learned on the job to file a qui tam suit in his private capacity." Id. This was necessarily so, reasoned the court, because "government employees maintain a dual status--arms of the government while at work, private citizens while not at work." Id
 In addition, the district court in Raytheon determined that the government employee cannot qualify for the "original source" exception to the jurisdictional bar of Sec. 3730(e)(4)(A). Id. at 176. The court here implied that because the government employee is required, as a condition of employment, to uncover and report fraud, two of the requirements for the "original source" exception were not met: first, the government employee is not someone with "independent knowledge" because the fruits of his efforts belong to his employer, the government; and second, the government employee cannot provide information to the government "voluntarily" if he must do so in response to the obligations of his employment. Id. In a broad holding, therefore, the district court concluded that:
 To be consistent with Congress' intent, Sec. 3730(e)(4) must be interpreted to ban all qui tam suits based on government information, unless the individual bringing the suit acquired his knowledge of the fraud in his private capacity. Qui tam suits ... that are based upon information discovered in the course of government employment, therefore, are barred.
 Id. at 177 (footnote omitted).
 On appeal, the First Circuit disagreed with the conclusion of the district court that "all qui tam actions brought by government employees are excluded by the False Claims Act." United States ex rel. LeBlanc v. Raytheon Co., 913 F.2d at 18. Declaring the district court's holding too broad, the circuit court found that Sec. 3730(e)(4)(A) "does not prevent government employees from bringing qui tam actions based on information acquired during the course of their employment but not as the result of a government hearing, investigation or audit or through the news media." Id. at 20.
 But while apparently rejecting the conclusion of the district court that there had been a public disclosure of the information upon which the qui tam suit had been brought, the circuit court nevertheless went on to address the question of whether the "original source" exception applied. Agreeing with the district court that a government employee, whose responsibility it was to uncover fraud as a condition of his employment, could not qualify as an "original source" of the information upon which the suit was based, the circuit court affirmed the district court's denial of subject matter jurisdiction. Id.
 Thus, the Raytheon court, after apparently finding that there had been no "public disclosure" on the facts before it, nevertheless went on to determine whether the qui tam relator qualified for the "original source" exception to the jurisdictional bar of section 3730(e)(4)(A). Finding that the relator "[could not] qualify for the 'original source' exception to Sec. 3730(e)(4)'s jurisdictional bar," the court upheld the district court's dismissal for lack of subject matter jurisdiction. Id. at 20.
 In our view, the Raytheon court went one step too far. Once it found no "public disclosure," its inquiry should have ended and jurisdiction should have been acknowledged. The application of the "original source" exception to the jurisdictional bar in order to defeat jurisdiction that already existed, was improper.
 
 
 [14]
 While we decline to enter into an analysis of the "original source" exception to section 3730(e)(4)(A)'s jurisdictional bar, this finding implicitly rejects the United State's assertion that "a government employee who brings an action based upon information he learns within the scope of his government duties can never qualify as an 'original source.' " Brief for United States at 48 (emphasis in original). Such an assertion is simply incompatible with our holding that government employees are not barred from bringing qui tam actions based upon information acquired in the course of their government employment
 
 
 [15]
 Congressional purpose with respect to the status of government employees as qui tam relators is elusive at best. What is clear, is that Congress, with its 1986 amendments to the False Claims Act, intended to "[e]ncourage more qui tam suits by expanding the universe of potential relators." Erickson, 716 F.Supp. at 918. It is also undisputed that Congress could have specifically excluded government employees from the class of proper qui tam relators, but that it did not. It would seem that government employees would be both the most likely class of qui tam relators, as well as the most valuable class because of their access to instances of fraud against the government. In light of these observations, it seems that a reading of the False Claims Act which in any way categorically excludes government employees as qui tam relators, cannot be supported by the legislative history
 
 
 [16]
 We note, however, that the first two concerns articulated by the United States describe administrative difficulties that might arise when any private qui tam plaintiff files suit prior to the completion of a government investigation into the subject of the action. In addition, we note that the False Claims Act provides that the qui tam complaint filed by a private person be filed in camera and that it remain under seal for at least 60 days without disclosure to the defendant, which time may be extended for good cause upon motion by the government. 31 U.S.C. Sec. 3730(b)(2), (3). Thus, the government may, if disclosure of information concerning the qui tam complaint to the defendant would prejudice an ongoing investigation, move the court for extensions of the time during which the complaint remains under seal. See 31 U.S.C. Sec. 3730(b)(3). Further, if the government is concerned that the private qui tam plaintiff will not satisfactorily litigate the action on behalf of the United States, the government may elect to intervene and proceed with the action itself. 31 U.S.C. Sec. 3730(b)(2). And finally, the government may dismiss the action brought by the private qui tam plaintiff, as long as the private relator is afforded notice and opportunity for a hearing on the motion to dismiss. 31 U.S.C. Sec. 3730(c)(2)(A). Such safeguards go a long way toward alleviating many of the government's concerns
 
 
 [17]
 As counsel for Williams pointed out in oral argument, Congress has clearly articulated such a bar in a qui tam statute allowing actions against persons committing bank fraud crimes. That statute allows "any person" to file an action under the section, subject to five exceptions. The fifth exception is nearly identical to the exception at issue here. It states that an action is not valid if,
 (5) the declaration consists of allegations or transactions that have been disclosed to a member of the public in a criminal, civil, or administrative proceeding, in a congressional, administrative, or General Accounting Office report, hearing, audit or investigation, by any other government source, or by the news media, unless the person providing the declaration is the original source of the information.
 12 U.S.C.A. Sec. 4204(a)(5) (West 1991). In the first exception, however, Congress explicitly bars actions filed by government employees and based upon information acquired in the course of their government employment. That exception states that an action is not valid if,
 (1) the declaration is filed by a current or former officer or employee of the Federal or State government agency or instrumentality who discovered or gathered the information in the declaration, in whole or in part, while acting within the course of the declarant's government employment;
 12 U.S.C.A. Sec. 4204(a)(1) (West 1991).