**UNITED STATES of America ex rel.
Harold R. FINE, Plaintiffs,**

v.

**The UNIVERSITY OF CALIFORNIA and
the Board of Regents of the University
of California, Defendants.**

**No. C91–3608–FMS.**

United States District Court,
N.D. California.

April 7, 1993.

Stephen A. Shefler, Asst. U.S. Atty., Stuart M. Gerson, U.S. Attorney's Office; Alan B. Exelrod, San Francisco, CA; Stuart M. Nelkin, Nelkin & Nelkin, P.C., Houston, TX; and Robert Salcido, U.S. Dept. of Justice, Washington, DC, for plaintiffs.

John B. Clark, William D. Hunter, Pettit & Martin, San Francisco, CA; and James E. Holst and, Allen B. Wagner, University of California, Office of the Gen. Counsel, Oakland, CA, for defendants.

## ORDER GRANTING MOTION TO DISMISS

FERN M. SMITH, District Judge.

### INTRODUCTION

Relator, Harold R. Fine ("Mr. Fine"), brought this *qui tam* action against the University of California ("University"), alleging violations of the False Claims Act ("FCA"). Defendants filed this motion to dismiss claiming that (1) the Court lacks subject matter jurisdiction to review this case because Mr. Fine's claims are based on information that was publicly disclosed prior to the filing of the action and Mr. Fine was not an "original source" of the disclosed information; (2) Inspector General employees should be barred from bringing FCA *qui tam* actions because such actions conflict with the Inspector General Act ("IGA"); (3) construing the FCA to confer *qui tam* standing on members of the investigative and prosecution arms of the executive branch violates the principles of separation of powers; and (4) the Eleventh Amendment precludes this Court's exercise of jurisdiction.

The Court grants defendants' motion to dismiss because Mr. Fine was not an "original source" and IG auditors should be barred from bringing *qui tam* actions arising from IG audits.

### FACTS

From September 1982 through July 18, 1992, Mr. Fine was employed by the Office of the Inspector General ("IG") at the United States Department of Energy ("DOE"). Mr. Fine was an assistant manager of the Western Region Audit Office. Mr. Fine both conducted audits and supervised other auditors of contractors doing business with the DOE. Among those were audits relating to the University.

Mr. Fine states that during the course of his work, he brought suspected violations of the FCA to the attention of his supervisors. He alleges that his superiors were unwilling to either prosecute or institute civil actions against the alleged violators. The suit, however, does not name any government officials who were allegedly corrupt or incompetent.

Mr. Fine alleges that he continued to investigate, at his own expense, his suspicions of fraud, misuse, and taxing of appropriated funds addressed in the complaint. After his retirement, Mr. Fine brought seven *qui tam* actions. Of these seven actions, two were voluntarily dismissed and one was dismissed by this Court (Schnacke, J.) for lack of subject matter jurisdiction. *United States ex rel. Fine v. Chevron, U.S.A.*, No. C91–3224 (N.D.Cal.).

Mr. Fine's initial complaint alleged that: (1) defendants, between 1986–1989, intentionally circumvented regulations restricting the amount the University could spend on exploratory research and development ("ER & D"), and (2) defendants deliberately made false claims to the government relating to their operation of electrical, water, and natural gas utilities. The complaint was later amended to allege that the practice of circumventing regulations continued into 1991–1992. The amended complaint also added the allegation that defendants had obtained unauthorized payments from the United States to subsidize their employees' use of the cafeteria and transport to the airport. The complaint was amended further to allege that defendants improperly expended funds obtained under the Civilian Nuclear Waste Policy Act.

■ The FCA requires that a *qui tam* complaint be filed in camera and kept under seal so that the United States may review the complaint and determine whether intervention is appropriate. The Department of Justice declined to intervene and, in fact, joins the defendants in this motion to dismiss. The United States filed a brief as *amicus curie* asking for dismissal of this action for substantially the same reasons as defendants.

## HISTORY OF THE FALSE CLAIMS ACT'S WHISTLE BLOWER PROVISIONS

■ The FCA provides penalties for those who knowingly present false or fraudulent claims to the United States and incentives for whistleblowers who expose the fraud by filing *qui tam* actions. The FCA, as enacted in 1863, included no restrictions on "parasitic" suits. A "parasitic" suit is one in which a person with no independent knowledge of the fraud at issue files a *qui tam* action based on either the government's investigation of the incidents of fraud or other public disclosures solely to share in the award. In 1943, the Supreme Court ruled that a relator who brought a *qui tam* action based purely on allegations copied from a criminal indictment was entitled to proceed and share in any award. *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). The Court held that nothing in the FCA prohibited a *qui tam* action based solely on information already in the government's possession and that such prohibition, if intended, was a matter for Congress. *Id.*

Congress responded to this decision by amending the FCA. The 1943 amendments barred all *qui tam* actions based on information already in the government's possession. 31 U.S.C. § 3730(b)(4) (1982) (superseded) 89 Cong.Rec. 10844 (1943). These amendments were interpreted to preclude all *qui tam* actions once any government agency had knowledge of the alleged fraud. In *United States ex rel. Wisconsin (Dept. of Health and Social Services) v. Dean*, 729 F.2d 1100 (7th Cir.1984), the state of Wisconsin independently investigated Medicaid fraud and reported its findings to the government as required by law. The Seventh Circuit affirmed dismissal of the *qui tam* plaintiff because of that disclosure, stating that the responsibility to protect relators who informed the government of their suspicions of fraud lay with Congress. *Id.* at 1106.

In 1986, Congress amended the *qui tam* provisions to the FCA once again. The 1986 amendments repealed the "government knowledge" jurisdictional bar of the 1943 amendments. To avoid "parasitic" suits, Congress enacted narrow exceptions to *qui tam* jurisdiction. These exceptions provide as follows:

> Section 3730(e)(4)(A) No Court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

■ Pursuant to these amendments, once public disclosure occurs, a *qui tam* action is barred unless the relator is the "original source" of the information. *See e.g., United States ex rel. Doe v. John Doe Corp.*, 960 F.2d 318, 324 (2nd Cir.1992). Furthermore, the Ninth Circuit has held that in order for jurisdiction to lie, the relator must not only be the "original source" of the information but must have been a direct or indirect source of the public disclosure that gave rise to the jurisdictional bar. *Chen–Cheng Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1419–20 (9th Cir.1992) ("If there is to be a bounty for disclosing those troubles, it should go to one who in fact helped to bring them to light.").

## DISCUSSION

### A. Subject Matter Jurisdiction Under 31 U.S.C. § 3730(e)(4)

Mr. Fine concedes that his claims are based on information that was publicly disclosed. Accordingly, this Court has jurisdiction only if Mr. Fine can demonstrate that he is an "original source." In order to prove that he is the original source, Mr. Fine must show that (1) he had "direct and independent knowledge of the information on which his allegation[s are] based"; and (2) he "voluntarily provided the information to the Government" before filing his *qui tam* action. 31 U.S.C. § 3730(e)(4)(B). Mr. Fine must also prove that he was, directly or indirectly, a source of the public disclosure. *Wang*, 975 F.2d at 1420; *see also United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148 (2nd Cir.1993); *United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 17 (2nd Cir.1990).

### 1. Direct and Independent Knowledge

The Ninth Circuit has defined the "direct and independent knowledge" requirement quite simply. "[W]here one would not have learned of the information but for its public disclosure, one does not have 'direct and independent knowledge.'" *Wang*, 975 F.2d at 1417. In *Wang*, the relator had "direct and independent knowledge" because he was a mechanical engineer who worked on the problem and "saw [it] with his own eyes." *Id.* His knowledge was "unmediated by anything but [his] own labor." *Id.*

Mr. Fine claims that he, like Wang, saw fraudulent activities with his own eyes when he examined documents in the course of his work. He claims that all of his allegations are based upon knowledge acquired through his own audits or his supervision of other auditors. He claims to have personally developed audit programs that led to the acquisition of the information on which his complaint is based. Defendants counter that Mr. Fine would never have had access to any of those documents but for their public disclo-

sure by laboratory employees in administrative audits. As such, he is a recipient, not a source, of the public disclosures.

In *United States ex rel. LeBlanc v. Raytheon Co.*, 913 F.2d 17 (1st Cir.1990) *cert. denied* —— U.S. ——, 111 S.Ct. 1312, 113 L.Ed.2d 246 (1991), the First Circuit dealt with a situation similar to the instant case. LeBlanc was a Quality Assurance Specialist for the United States Government Defense Contract Administrative Service. He brought a *qui tam* action based on fraud he observed in handling government contracts by the defendant. The Court held that a government employee in LeBlanc's position could not qualify as an "original source." *Id.* at 20. "It was LeBlanc's responsibility, a condition of his employment, to uncover fraud. The fruits of his effort belong to his employer—the government. Thus, LeBlanc was not someone with 'independent knowledge of the information' as required by the statute." *Id.* The Court went on to state that this holding does not apply to all government employees but only those in LeBlanc's position. *Id.*[1]

The present case is even more compelling than *LeBlanc* and suffers from none of the same defects. Public disclosure has been conceded here. Mr. Fine's position was that of auditor and supervisor. He gleaned his information by reviewing reports turned over to the federal government and, often, prepared by other auditors. In his deposition, Mr. Fine admits to gathering information by looking through, for example, work papers prepared by other auditors. Some of the information Mr. Fine claims to have received through anonymous tips. This information cannot be direct. It was received, second-hand, from the anonymous tipper who had direct knowledge.

None of the information on which Mr. Fine bases his complaint is direct, as defined by the Third Circuit as "'marked by absence of an intervening agency, instrumentality, or

---

**1.** The Eleventh Circuit, in *U.S. ex rel. Williams v. NEC Corp.*, 931 F.2d 1493 (11th Cir.1991), found that the *LeBlanc* court "went one step to far" by ruling on the issue of "original source" when there was no public disclosure. *Id.* at 1501 n.

**13.** While the Court also criticized the broad district court opinion in *LeBlanc*, it did not criticize the First Circuit's narrower holding that a government employee whose job it is to uncover fraud could not qualify as an "original source."

influence: immediate.'" *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3rd Cir.1991) quoting *Webster's Third New International Dictionary* 640 (1976). Mr. Fine saw no fraud with his own eyes. He saw reports and audits of alleged fraud, presented by various intermediaries. As a supervisor, the information he received was obtained from the field auditors. As an auditor, the information he received was obtained from the entities he audited. Even the investigations Mr. Fine alleges he carried out after his retirement consisted of examining government documents, including audit work papers and audit lead sheets, and speaking with other government officials. Because Mr. Fine, "would not have learned of the information but for its public disclosure, [he] does not have 'direct and independent knowledge of the information.'" *Wang*, 975 F.2d at 1417.

### 2. *Voluntarily Provided*

In order to qualify as an "original source," a relator must also have "voluntarily provided" the government with the information prior to filing the lawsuit. 31 U.S.C. § 3730(e)(4)(B). As an auditor employed by the DOE–IG, Mr. Fine had a duty to disclose fraud to his supervisors. Indeed, that was the paramount responsibility of his position. To do otherwise would likely have been grounds for his termination; therefore, his actions cannot be construed as "voluntary." They were compelled by the nature of his employment.

### 3. *Source to the Entity That Made Public Disclosure*

Finally, in order to be an "original source," Mr. Fine must have been a direct or indirect source to the entity that publicly disclosed the information. *See Wang*, 975 F.2d at 1419; *Dick*, 912 F.2d at 17. Mr. Fine must demonstrate that his was one of the voices that led to the disclosure of the alleged fraud.

"A 'whistleblower' sounds the alarm, he does not echo it." *Wang*, F.2d at 1419.

Mr. Fine alleges that his investigations led to the discovery of the information upon which his suit is based. He claims that he then disclosed the information to his superiors but nothing was done, despite his repeated efforts. The complaint contains no allegations against any DOE–IG employees for misconduct or incompetence. His superiors' discretionary decision not to take action does not convert Mr. Fine into an original source.

Defendants present a distinction between a source of information and a recipient. The Court finds this distinction compelling. IG auditors are collectors of information. They are hired, trained and paid to collect exactly the type of information upon which Mr. Fine bases his complaint. Their job is to review the information presented by others. Accordingly, they can only be recipients of information, not its sources.

### B. *The False Claims Act and the Inspector General Act*

█ Nothing in section 3730(e)(4)(A) precludes all government employees from bringing *qui tam* actions based on information they acquired during the course of their employment. *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1501 (11th Cir. 1991). Government employees whose knowledge of events giving rise to a *qui tam* actions arises from audits, investigations and the review of government publications, however, can be precluded from bringing a *qui tam* action because their information is not "direct and independent." They cannot be "original sources" because the information they acquire is necessarily second-hand.[2]

Furthermore, the policy reasons presented by defendants for preventing IG auditors from bringing *qui tam* actions are compelling. Both the FCA and IGA are critical to the government's anti-fraud efforts. The

---

**2.** Mr. Fine's reliance on *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416 (9th Cir.1991), is misplaced. In *Hagood*, there was no public disclosure and, accordingly, no discussion of "original source." This Court bases its holding regarding the inability of IG auditors to file *qui tam* actions on the fact that they cannot be "original sources" because they cannot have "direct and independent" knowledge of information they acquire as a result of audits and cannot "voluntarily provide" information it is their duty as auditors to disclose.

FCA allows recovery and imposes penalties for fraudulent activities. The IGA establishes independent agencies within each federal department to monitor, investigate and report fraud. The purposes of the acts are the same—to ferret out fraud against the government.

Allowing IG auditors to reap huge bounties from *qui tam* actions could create serious ethical conflicts and prevent them from fulfilling their employment responsibilities. It would create a perverse incentive. Rather than reporting their findings of fraud as required by the IGA, auditors could hire private counsel and collect a percentage of any award granted pursuant to the FCA by filing suit when they first learn of suspected fraud. All FCA awards would then be shared with the government employees whose paid responsibility it was to investigate the fraud. Furthermore, whistleblowers might be unwilling to disclose fraud to the IG, the agency charged with encouraging and protecting them, *see* 5 U.S.C.App. 3 § 7, if by doing so they risk losing their financial incentive to the auditor. "*Qui tam* suits are meant to encourage *insiders* privy to a fraud on the government to blow the whistle on the crime." *Wang*, 975 F.2d at 1419 (emphasis added). The purpose of the FCA is "encouraging 'private individuals who are aware of fraud being perpetrated against the Government to bring such information forward.'" *Id.* citing H.R.Rep. No. 660, 99th Cong., 2d Sess. 22 (1986). Acting in his employment capacity as an IG auditor, Mr. Fine was a representative of the government, not a private individual and insider.

This Court agrees with Judge Schnacke's holding in *United States ex rel. Fine v. Chevron, U.S.A.*, No. C91–3224 (N.D.Cal.), that "it makes no sense" to permit government employees who receive salaries for the purpose of uncovering and reporting fraud to collect bounties under the FCA. Mr. Fine's filing of seven *qui tam* actions upon retiring from the DOE–IG is an example of the consequences that would inevitably result. Because laws must be construed in a manner that integrates statutory schemes and avoids absurd results, *United States v. American Trucking Assns.*, 310 U.S. 534, 542–52, 60 S.Ct. 1059,

1063–68, 84 L.Ed. 1345 (1940), the Court holds that IG employees may not bring *qui tam* actions under the FCA against any entity wherein the relevant information was obtained as part of an IG investigation.

**B.** *Other Issues*

Because this Court holds that Mr. Fine is not an "original source" of the information on which he bases his complaint, there is no need to address defendants' separation of powers or sovereign immunity arguments.

### CONCLUSION

For the reasons stated above, the Court finds that it does not have subject matter jurisdiction over this case pursuant to 28 U.S.C. § 3730. The motion to dismiss is GRANTED.

The clerk of the Court is directed to close the file.

SO ORDERED.