UNITED STATES of America
ex rel., Plaintiff,

Harold R. FINE, Plaintiff–Appellant,

v.

CHEVRON, U.S.A., INC.; Bechtel Petroleum Operations, Inc.; and Williams Brothers Engineering Company, Defendants–Appellees.

UNITED STATES of America
ex rel., Plaintiff,

Harold R. FINE, Plaintiff–Appellant,

v.

The UNIVERSITY OF CALIFORNIA, and The Board of Regents of the University of California, Defendants–Appellees.

Nos. 93–15012, 93–15728.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 16, 1994.

Decided Nov. 2, 1994.

Stuart M. Nelkin, Nelkin & Nelkin, Houston, TX, Alan B. Exelrod, San Francisco, CA, for Fine, plaintiff-appellant.

Alson R. Kemp, Jr., and Michael F. Labianca, Pillsbury, Madison & Sutro, San Francisco, CA, for Chevron, U.S.A., Inc., defendant-appellee.

Scott L. Gardner, Thelen, Marrin, Johnson & Bridges, San Francisco, CA, for Bechtel Petroleum Operations, Inc., defendant-appellee.

Weyman I. Lundquist and Stephanie M. Hinds, Heller, Ehrman, White & McAuliffe, San Francisco, CA, for Williams Bros. Engineering Co., defendant-appellee.

John B. Clark, William D. Hunter, and Patrick J. Martell, Pettit and Martin, San Francisco, CA, for the University of California and the Board of Regents of the University of California, defendants-appellees.

Glenn S. Kaplan, U.S. Dept. of Justice, Civil Div., Washington, DC, for U.S., plaintiff-amicus.

Before: CHOY, REINHARDT, and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

These are appeals from orders entered by the United States District Court for the Northern District of California dismissing for lack of subject matter jurisdiction two qui tam actions brought under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., by Harold R. Fine. Fine filed one action on behalf of the United States against Chevron, Bechtel, and Williams Brothers to recover damages and penalties for alleged fraud in the execution of contracts for the management and operation of the Strategic Petroleum Reserve. Fine filed the second action on behalf of the United States against the University of California to recover damages and penalties for alleged fraud in the maintenance and operation of the Los Alamos National Laboratory and Livermore National Laboratory. 821 F.Supp. 1356. The information upon which Fine based his claims was discovered during his employment as an auditor for the United States Department of Energy, Office of Inspector General, Office of Audits. In separate rulings, the district court dismissed both actions on the grounds that Inspector General auditors are barred from bringing qui tam actions arising from Inspector General audits and/or the court lacked jurisdiction because Fine was not an "original source" under the FCA.[1] Fine

---

**1.** In *United States ex rel. Fine v. Chevron, U.S.A.,* the district court judge orally held that "it makes no sense" to permit Fine to bring a qui tam action. In *United States ex rel. Fine v. The University of Cal.,* the judge, in a written order,

timely appealed both dismissals. The appeals were consolidated. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we reverse and remand.

## FACTS AND PROCEEDINGS

Fine worked in the Office of Audits of the Office of the Inspector General at the U.S. Department of Energy (DOE–IG) from September 1982 until July 18, 1991. Fine was employed by the DOE–IG as Assistant Manager of the Western Region Audit Office in Albuquerque, New Mexico. As part of his job responsibilities, Fine conducted audits and supervised others who conducted audits of contracts entered into by and between DOE and private contractors. As an audit supervisor, Fine's responsibilities extended to audits at the DOE's eleven western field offices and twenty-six integrated contractor sites including the Strategic Petroleum Reserve, the Los Alamos National Laboratory, and the Lawrence Livermore National Laboratory. Fine retired from the DOE–IG office on July 18, 1991.

After retiring, Fine brought these qui tam actions based on information he acquired while he was employed as an auditor. Fine alleged that, despite his repeated urgings, his supervisors at the DOE–IG office and other DOE officials refused to take action against the defendants. As required by the FCA, Fine's complaints were filed and kept under seal to allow the United States Government to determine whether to intervene. 31 U.S.C. § 3730(b)(2). The Government declined to participate in the actions and the district court ordered Fine's complaints unsealed and served. The defendants moved to dismiss. The district court granted the motions on two grounds: 1) that the FCA construed in relation to the Inspector General Act, 5 U.S.C.App. 3, bars Inspector General employees from bringing qui tam actions based upon information obtained in an Inspector General Audit or investigation; and 2) the district court lacked subject matter jurisdiction under the FCA, 31 U.S.C. § 3729 *et seq.* (1986).

stated both the reasons given above for granting

## ANALYSIS

*Standards of Review*

We review de novo a district court's decision on subject matter jurisdiction. *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.,* 970 F.2d 552, 554 (9th Cir.1992). The district court's factual findings on jurisdictional issues must be accepted unless clearly erroneous. *Id.*

*The False Claims and Inspector General Acts*

Many courts have discussed the history of the False Claims Act. What we repeat here of that discussion is necessary to our analysis of the relationship between the False Claims and Inspector General Acts.

The False Claims Act is a tool for combatting fraud perpetrated against the United States Government. False Claims Amendments Act of 1986; Senate Judiciary Committee, S.Rep. No. 345, 99th Cong., 2d Sess. 9 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5274 ("S.Rep."). It was enacted during the Civil War at the behest of President Abraham Lincoln to control fraud in defense contracts. *United States ex rel. Williams v. NEC Corp.,* 931 F.2d 1493, 1497 (11th Cir.1991) (citation omitted). The original Act allowed private citizens with knowledge of fraud to sue the perpetrators of the fraud on behalf of the government (a "qui tam" action) and recover a share of the damages. *Id.* Such was the state of the FCA for the next 80 years.

In the late 1930's, several qui tam actions were brought by persons who had no independent or personal knowledge of the fraud which they were alleging, but apparently based their actions on information obtained from criminal indictments brought by the government. *Id.* (citation omitted). Such actions were labeled "parasitic" or "copy-cat" suits. The Supreme Court resolved the legitimacy of such suits in *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). The Court held that such actions were not barred by the statute and that qui tam actions may be filed by

the motion to dismiss.

anyone, regardless of the source of the information forming the basis of the suit. *Id.* at 540–48, 63 S.Ct. at 382–86. The ruling in *Hess* led Congress to amend the qui tam provisions of the FCA. The 1943 amendments barred qui tam actions based on information which the Government possessed, regardless of whether the Government was actually using the information to prosecute fraud. S.Rep. at 5277.

▮ In 1978, Congress passed the Inspector General Act, 5 U.S.C.App. 3, ("IGA") to combat fraud in government contracts and within government agencies and departments. 5 U.S.C.App. 3 § 2(b). The IGA established independent offices within various federal departments and agencies. *Id.* at § 2. These offices are charged with monitoring, investigating, and reporting fraud. *Id.* at §§ 4–6.

"Even after passage of the IGA, Congress felt that there existed 'serious roadblocks to obtaining information as well as weaknesses in both investigative and litigative tools' for prosecuting fraud." *United States ex rel. Fine v. MK–Ferguson Co.,* 861 F.Supp. 1544, 1546–47 (D.N.M.1994) (quoting S.Rep. at 5269). "[M]ost fraud referrals remain unprosecuted and lost public funds, therefore, remain uncollected." S.Rep. at 5269. "Congress amended the False Claims Act in 1986 by expanding the scope of qui tam actions. The 1986 amendments sought to strike a balance between, on the one hand, encouraging people to come forward with information regarding fraud, and on the other, preventing parasitic lawsuits. The amendments replaced the general jurisdictional bar on qui tam actions based on information in the pos-

session of the government with a more specific and less restrictive set of jurisdictional bars." *MK–Ferguson Co.,* —— F.Supp. at ——, 1994 WL 487951 at 2.[2]

After reviewing the purpose of the IGA and FCA, the district court held that "IG employees may not bring qui tam actions under the FCA against any entity wherein the relevant information was obtained as part of an IG investigation." The structure of the FCA makes it clear that no such prohibition exists. The "[e]xclusions of federal jurisdiction, set out in the 1986 amendments to the False Claims Act, are unusually precise." *United States ex rel. Hagood v. Sonoma County Water Agency,* 929 F.2d 1416, 1419 (9th Cir.1991). "A straightforward reading of the 1986 False Claims Act reveals that Congress did not explicitly exclude government employees from the class of proper qui tam relators." *Williams,* 931 F.2d at 1503; *accord Hagood,* 929 F.2d at 1420. Furthermore, the IGA is discussed at some length in the legislative history of the 1986 amendments to the FCA. *See* S.Rep. at 5269–73. To judicially infer an IG employee jurisdictional bar in the qui tam provisions of the FCA, we would have to assume that Congress failed to consider Inspector General employees as possible qui tam relators, and that if Congress had considered them, they would have been compelled to exclude them from the operation of the Act. "It is not for this Court to make such assumptions, especially in light of the importance of qui tam jurisdiction to the history of the FCA and the attention the IGA received in the legislative history of the 1986 amendments." *MK–Ferguson Co.,* 861 F.Supp. at 1548. "The new jurisdictional bars were carefully crafted. They were framed by those surely aware of

---

**2.** No court shall have jurisdiction over an action brought by a former or present member of the armed forces ... against a member of the armed forces arising out of such person's service in the armed forces. 31 U.S.C. § 3730(e)(1).

No court shall have jurisdiction over an action brought ... against a Member of Congress, a member of the judiciary, or a senior executive branch official if the action is based on evidence or information known to the Government when the action was brought. *Id.* (e)(2)(A).

No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal,

civil, or administrative hearing, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information. *Id.* (e)(4)(A).

For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information. *Id.* (e)(4)(B).

[Marcus v.] *Hess,* its holding that 'any person' means 'any person,' and its declaration that arguments about the limits on suits by informers should be addressed to Congress not the courts." *Hagood,* 929 F.2d at 1420.

*"Original Source" Requirement*

The 1986 amendments to the False Claims Act prohibit courts from asserting jurisdiction over the subject matter of qui tam actions which are:

> based upon the *public disclosure* of allegations or transactions in a criminal, civil or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is the *original source* of the information.

31 U.S.C. § 3730(e)(4)(A) (emphasis added). Title 31 U.S.C. § 3730(e)(4) defines "original source" as "an individual who has *direct and independent* knowledge of the information on which the allegations are based and has *voluntarily* provided the information to the Government before filing an action under this section which is based on the information." (Emphasis added.)

■ In both actions filed with the district court, Fine conceded that his allegations of false claims had been publicly disclosed within the meaning of § 3730(e)(4)(A). The district court ruled that it did not have jurisdiction over the actions because Fine was not an "original source." This court has held that in order to be an "original source," a qui tam relator must allege that he (1) has direct and independent knowledge of the information, (2) voluntarily provided the information to the government, and (3) either directly or indirectly assisted in the public disclosure of the information. *Chen–Chen Wang ex rel. United States v. FMC Corp.,* 975 F.2d 1412, 1419 (9th Cir.1992). The district court reasoned that Fine did not have "direct and independent knowledge" of the information because he either received the information from field auditors he supervised or from the entities he audited. The district court also reasoned that Fine had not "voluntarily provided" the government with the information

prior to filing the lawsuit because, as an auditor employed by the DOE–IG, Fine had a duty to disclose fraud to his supervisors. Finally, the district court found that Fine was not a direct or indirect source because he was a recipient of information collected through the audits, not a source.

*1. Direct and Independent Knowledge*

■ Fine alleges he acquired the information upon which he bases his suits while employed by the government either through personally conducting audits, through directing the audits performed by his subordinates, or through personally developing audit programs which lead to the acquisition of information. Wang was a mechanical engineer who brought suit under the FCA against his former employer. During the course of his employment, Wang had become aware of defects in a transmission system used in vehicles sold to the government. We said:

> The district court, purporting to follow *Houck on Behalf of the United States v. Folding Carton Administration Committee,* 881 F.2d 494, 505 (7th Cir.1989), held that Wang's knowledge was not "direct and independent." This was error. *Houck* stands for the simple proposition that where one would not have learned of the information but for its public disclosure, one does not have "direct and independent knowledge" of the information. Wang had personal knowledge of the Bradley's transmission problems because he worked (however briefly) on trying to fix them.... Wang's knowledge of the transmission problems was "direct and independent" because it was unmediated by anything but Wang's own labor.

*Wang,* 975 F.2d at 1417 (citation omitted).

This is not a case in which Fine would not have acquired the information upon which he bases his suit "but for" the public disclosure of the audit reports. Rather, he acquired his knowledge prior to the public disclosure while reviewing audit sheets and other financial records. Fine's own labor led to his discovery of the allegedly fraudulent payments. Thus, he had "direct and independent knowledge" of the information upon

which he based the allegations contained within his complaints.

### 2. Voluntary Disclosure

■ Fine disclosed the fraud he discovered to his superiors while employed by the Office of Inspector General. This was a job requirement. The district court concluded that, because Fine's disclosure was required, it was not "voluntary." We think this is reading too much into the statute. All government employees are under an obligation to disclose fraud they discover in the course of their employment to their employers. The legislative history of the 1986 False Claims Act amendments indicates that Congress was concerned about the failure of government employees to report fraud:

> In 1983, the U.S. Merit Systems Protection Board conducted a survey of approximately 5,000 Federal Government employees to determine to what extent observed fraud, waste, and abuse was going unreported. The Merit Systems Board reported that 69 percent of those who believed they had direct knowledge of illegalities failed to report the information. Those employees who chose not to report fraud were then asked why they failed to come forward. The most frequently cited reason given (53 percent) was the belief that nothing would be done to correct the activity even if reported.... The Committee believes changes are necessary to halt the so-called "conspiracy of silence" that has allowed fraud against the Government to flourish.

S.Rep. at 5269–71.

The 1986 False Claims Act amendments were intended to encourage government employees voluntarily to disclose fraud by giving them "an opportunity to speak up and take action without fear and with some assurance their disclosures will lead to results." *Id.* at 5271. It would be incongruous for us, therefore, to read the "voluntary disclosure" requirement to bar a government employee who has gone to his supervisors to report fraud from bringing a qui tam action. Fine "voluntarily disclosed" within the meaning of § 3730(e)(4)(B).

### 3. Direct or Indirect Assistance in the Public Disclosure of the Information.

■ As alleged in his complaints, Fine prepared the original audit programs and draft reports which outlined the alleged fraud. Fine made repeated attempts to have his superiors act upon the information he had provided them, but no action was ever taken.

> It is important to note that under the rule we adopt today, *all* those who "directly or indirectly" disclose an allegation might qualify as its original source. Anyone who helped to report the allegation to either the government or the media would have "indirectly" helped to publicly disclose it. If, however, someone *republishes* an allegation that already has been publicly disclosed, he cannot bring a qui tam suit, even if he had "direct and independent knowledge" of the fraud. He is no "whistleblower." A "whistleblower" sounds the alarm; he does not echo it. The Act rewards those brave enough to speak in the face of a "conspiracy of silence," and not their mimics.

*Wang,* 975 F.2d at 1419 (citations omitted) (emphasis in original).

Fine helped report the allegations of fraud to the government before the allegations were publicly disclosed. Therefore, under *Wang,* Fine "directly or indirectly" disclosed the allegations of fraud. Fine was an "original source" under the FCA.

### Eleventh Amendment Immunity

■ Because we review the district court's determinations of subject matter jurisdiction de novo, the University of California asks us to consider an alternate basis for dismissal argued by the University but not decided by the district court: that the Eleventh Amendment of the United States Constitution bars Fine's action against the University. The Eleventh Amendment precludes federal court jurisdiction over actions brought by private citizens against a state, its agencies or departments. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). The University is a state entity for purposes of the Eleventh Amendment, and the State of California has not waived its Eleventh Amendment immunity. *BV Eng'g*

*v. University of Cal., L.A.,* 858 F.2d 1394, 1395–96 (9th Cir.1988), *cert. denied,* 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 859 (1989). The United States may sue states in federal courts notwithstanding the Eleventh Amendment. *United States v. Mississippi,* 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965); *West Virginia v. United States,* 479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987).

Thus, if Fine's action against the University of California is a suit by the United States, it is not barred by the Eleventh Amendment. This court recently concluded that "in a *qui tam* action, the government is the real party in interest." *United States ex rel. Killingsworth v. Northrop Corp.,* 25 F.3d 715, 720 (9th Cir.1994). Thus, Fine's qui tam action against the University of California is not barred by the Eleventh Amendment.

We REVERSE the district court's dismissal of Fine's qui tam actions and REMAND for proceedings consistent with this opinion.