**UNITED STATES ex rel. Neil LOCKHART, Plaintiff,**

**v.**

**GENERAL DYNAMICS CORP. et al., Defendants.**

**Case No. 4:04cv296–RH/WCS.**

United States District Court, N.D. Florida, Tallahassee Division.

Jan. 3, 2007.

Benjamin W. Beard, Jd Roy Atchison, US Attorney, Pensacola, FL, E. Bryan Wilson, US Attorney, Tallahassee, FL, for Plaintiff.

Neil Lockhart, pro se.

Amy L. Tenney, David A. Churchill, Julie M. Carpenter, Jenner & Block LLC, Washington, DC, Temple Fett Kearns, Joseph Marc Goldstein, Shutts & Bowen LLP, Fort Lauderdale, FL, for Defendants.

## ORDER DENYING MOTION TO DISMISS

ROBERT L. HINKLE, Chief Judge.

This is a qui tam action alleging fraud in connection with government contracts. Defendants have moved to dismiss, asserting that the action is barred by the "public disclosure" provision of the False Claims Act, that the relator has failed to plead fraud with particularity, and that the action is barred in part by the statute of limitations. I deny the motion to dismiss.

## I.

### Background

From 1986 to 2004, relator Neil Lockhart worked at a facility where small-caliber ammunition propellant—gun powder—was manufactured. The facility's largest customer was the United States military, which used the propellant in ammunition for weapons including M–16 rifles and M–60 machine guns. Mr. Lockhart alleges that part of his job was to perform specific quality control tests mandated by the governing contracts with the military but that, at the instruction of his supervisors, he systematically failed to perform certain required tests. Mr. Lockhart says this occurred from August 1986 until June 2004.

In July 2004, Mr. Lockhart reported this practice to corporate management, which in turn reported the allegations to the Department of Defense through its Voluntary Disclosure Program, a formally established program allowing government contractors to make voluntary disclosures of fraudulent practices. Three days later—before the government took any action or made any inquiries in response to the voluntary disclosure—Mr. Lockhart filed this action. The complaint seeks damages on behalf of the United States as authorized by the False Claims Act, 31 U.S.C. § 3730. Mr. Lockhart named as defendants the corporations that owned the manufacturing facility while the fraud was occurring and various corporate affiliates. After the government elected not to intervene, defendants were served with process.

Defendants have moved to dismiss. They argue that the complaint should be dismissed under the "public disclosure"

provision of the False Claims Act, for failure to allege fraud with sufficient particularity, and (at least in part) based on the statute of limitations.[1]

## II.

### Public Disclosure

■ If a qui tam complaint is based upon the "public disclosure" of allegations in specified ways, and the relator is not an "original source" of the information, then no court has subject matter jurisdiction and the claim must be dismissed. The full text of the governing provision states:

(A) No court shall have jurisdiction over an action under this section *based upon* the *public disclosure* of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, *administrative,* or Government Accounting Office report, hearing, audit, or *investigation,* or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an *original source* of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4).

Application of this provision in the case at bar raises four issues: (1) whether this action was "based upon" defendants' voluntary disclosure of the information at issue as part of the Voluntary Disclosure Program; (2) whether provision of the information as part of the Voluntary Disclosure Program was a "public disclosure"; (3) whether the disclosure was part of an "administrative ... investigation"; and (4) whether Mr. Lockhart was an "original source" of the information. The action properly would be dismissed only if the answer to the first three of these questions was yes, and the answer to the fourth was no.

The motion to dismiss founders on the third issue. I assume for purposes of the instant motion that an "administrative investigation," within the meaning of the Act, includes any inquiry, formal or informal, by a government official with duties touching on the matter at issue. *See, e.g., United States v. Bank of Farmington,* 166 F.3d 853, 862 (7th Cir.1999) ("investigations need not be ... formal ... [but] may be informal or casual inquiries" comparable to a "police officer, hearing a peculiar noise in a dark shop, investigat[ing] by gingerly shining a flashlight inside and asking, 'What's up?'"). But even on this most generous reading, an "investigation" must include at least some inquiry, some interest, some explicit or implicit undertaking by the government. Here there was nothing.[2]

To be sure, the Department of Defense established the Voluntary Disclosure Pro-

---

**1.** The complaint does a poor job of sorting out which defendant allegedly played what role in the alleged fraud. This is not, however, a focus of the motion to dismiss. For convenience, this order refers to "defendants" without specifying which defendant took what action. This should not, of course, be taken as a suggestion that defendants can appropriately be treated as a collective unit. In due course, it will be Mr. Lockhart's burden to establish a basis for imposing liability on any specific defendant.

**2.** Courts have given varying readings to the False Claims Act's requirement for an "investigation." None, however, is broad enough to include circumstances in which the government has done nothing at all. In addition to *Farmington,* cited above, relevant cases include *United States v. Catholic Healthcare West,* 445 F.3d 1147, 1153 (9th Cir.2006) (finding that a response to a Freedom of Information Act request *was not* pursuant to an administrative investigation and reasoning that "'investigation' implies independent governmental leg-work" and that False Claims

gram and thus provided a forum for self reports of fraud. But without some undertaking to investigate *this report,* merely establishing the program gave no more indication of the government's interest in the matters now at issue than having a telephone or mailbox. In short, defendants' provision of information to the Department of Defense was not made as part of an "administrative investigation," and this action thus is not barred.

This conclusion fully accords with the purpose of the statute as shown by its history. "The Act was first passed by Congress in 1863, at the request of President Lincoln, in an effort to combat profiteering by Union Army suppliers during the Civil War." *United States ex rel. Williams v. NEC Corp.,* 931 F.2d 1493, 1496–97 (11th Cir.1991). "[P]rivate persons ('relators') were empowered to bring suit under the Act, with the promise of a share of the damages recovered serving as incentive for such private enforcers." *Id.* at 1497. But a rise of parasitic qui tam suits in the 1930s, brought by relators based on publicly available information in government files and indictments, led to a 1943 amendment jurisdictionally barring suits derived from evidence possessed by the United States. *Id.*

Following the decline of qui tam suits, based in part on the unintended over-

breadth of the 1943 amendments, Congress amended the Act again in 1986. *Id.* at 1497–98. "The 1986 amendments were intended to increase private citizen involvement in exposing fraud against the government while preventing opportunistic suits by private persons who heard of fraud but played no part in exposing it." *Cooper ex rel. United States v. Blue Cross and Blue Shield of Fla., Inc.,* 19 F.3d 562, 565 (11th Cir.1994). "Questions presented under the Act must be considered with these goals in mind." *Id.*

The contours of the current jurisdictional bar in § 3730(e)(4) are the product of the 1986 amendments and should be understood in their historical context. Viewed in this manner, it hardly seems surprising that Mr. Lockhart would be allowed to proceed. When information has been disclosed to the public, the need for a qui tam action is low, and the risk of unwarranted profiteering is high—precisely the reason for the 1943 amendments. The same is not true, however, when an insider with firsthand knowledge of fraud files an action prior to any disclosure outside the government and prior to any expression by any government official of even the slightest interest in pursuing the matter. Mere disclosure to the government without any expression of interest by the government does not necessarily eliminate the need for a relator—public officials

Act's "jurisdictional bar groups ... 'investigation' with a series of other enumerated sources that each involve extensive governmental work product and involvement."); *United States ex rel. Mistick PBT v. Housing Authority,* 186 F.3d 376, 384 (3d Cir.1999) (finding that the response to a FOIA request *was* pursuant to an administrative investigation and stating that "[a]ccepted definitions of the term 'investigation' include 'a detailed examination,' and the 'making of a search.'" (citations omitted)); *United States ex rel. Grant v. Rush–Presbyterian/St. Luke's Med. Ctr.,* No. 99 C 06313, 2001 WL 40807, at *3 (N.D.Ill. Jan. 16, 2001) ("disclosure of the

fraud alleged in this case took place in the context of [an] 'administrative ... investigation,' ... since the information was disclosed by [defendant's] representatives and employees during the course of interviews conducted by Government investigators and other officials."); *United States ex rel. Rost v. Pfizer Inc.,* 446 F.Supp.2d 6, 18 (D.Mass.2006) (rejecting argument that disclosure to public officials and the assignment of an agent to the case were sufficient to constitute an administrative investigation before any actual inquiry began, and stating that the "disclosures to the government, at best, initiated the government's investigation.").

sometimes do not act, whether from corruption, laziness, or lack of resources. And disclosure only to the government, when there is no inquiry or other expression of interest, poses much less risk of unwarranted profiteering. Indeed, such a disclosure ordinarily does not increase the risk of unwarranted profiteering above the risk always present in any qui tam setting.

The conclusion that Mr. Lockhart's action can go forward because defendants' disclosure to the government was not part of an "administrative ... investigation" makes it unnecessary to address the other three prerequisites to application of the statute's "public disclosure" provision. Whether the complaint would survive based on those issues (as well as on the "investigation" issue) is unclear. First, Mr. Lockhart had the information at issue before it was reported as part of the Voluntary Disclosure Program, thus supporting an argument that this action was not "based upon" that disclosure, but some courts, including the Eleventh Circuit, have given "based upon" a broader reading—a reading under which this action might be held to be "based upon" the disclosure, even if not causally related to it.[3] Second, there is a split of authority on the extent to which a disclosure wholly within the government, unknown and unavailable to anyone in the general public, may suffice as a "public disclosure" under the Act. *Compare United States v. Bank of Farmington,* 166 F.3d 853, 862 (7th Cir. 1999) (opining that any disclosure to a "competent public official"—defined to include a government official authorized to investigate fraud of the type at issue— constitutes a "public disclosure"), *with United States ex rel. Rost v. Pfizer Inc.,* 446 F.Supp.2d 6, 15–18 (D.Mass.2006) (disagreeing with *Farmington* and collecting authorities to same effect).[4] Third, while

---

**3.** The Eleventh Circuit has said the "general definition of 'based on' is 'supported by.' " *Cooper ex rel. United States v. Blue Cross and Blue Shield of Fla., Inc.,* 19 F.3d 562, 567 (11th Cir.1994). Other courts have agreed. *See United States ex rel. Fine v. Advanced Scis., Inc.,* 99 F.3d 1000, 1006 (10th Cir.1996) (saying test of whether allegations are "based upon" publicly disclosed information is "whether 'substantial identity' exists between the publicly disclosed allegations or transactions and the *qui tam* complaint") (citing *United States ex rel. Precision Co. v. Koch Indus.,* 971 F.2d 548, 552 (10th Cir.1992)); *United States ex rel. Butler v. Magellan Health Servs., Inc.,* 74 F.Supp.2d 1201, 1210 (M.D.Fla.1999) ("Therefore, if at the time a relator files a qui tam complaint, the allegations or transactions have been publicly disclosed, then the allegations are 'based upon' the publicly disclosed information ..."). There is, however, authority to the contrary. *See, e.g., United States v. Bank of Farmington,* 166 F.3d 853, 863 (7th Cir.1999) (stating that " 'based upon' does not mean 'similar (even identical) to' but 'derived from.' "). None of these cases involved information that was not disclosed outside the government at all, as in the case at bar; one could argue both sides of the question whether that should matter.

**4.** The Eleventh Circuit has not explicitly ruled on whether voluntary disclosure to a competent public official suffices as a "public disclosure." The Eleventh Circuit and some district courts within it have, however, implied that "public disclosure" necessarily requires that information enter the public domain and be accessible to private citizens. *See United States ex rel. Williams v. NEC Corp.,* 931 F.2d 1493, 1499–1500 (11th Cir.1991) (rejecting argument that "when [a] government employee uses official information as a *private* citizen, he has disclosed the information to himself so that a 'public disclosure' occurs" and noting that "[e]ven if [relator's] investigation and report would qualify as ... 'public disclosure' ..., neither the investigation nor the report were ever *disclosed to the 'public'* before [the] qui tam suit was filed.") (emphasis added); *United States v. Enriquez,* No. 90– 6105–civ–paine, 1991 WL 236502, at *5 (S.D.Fla. July 12, 1991) ("Even if [administrative audit reports of a federal agency] do qualify as a type of public disclosure within the meaning of the statute, the [relators] are not barred from this suit unless the reports *were available to the 'public' at the time the actions were filed* ") (emphasis added); *United States ex rel. Butler v. Magellan Health Servs.,*

Mr. Lockhart had "direct and independent knowledge of the information on which the allegations are based," he provided the information only to corporate management, which in turn provided the information to the government; it thus is subject to question whether Mr. Lockhart met the Act's requirement that, in order to be an "original source," one must voluntarily provide the information at issue "to the Government."

In sum, because the only disclosure of information to the government prior to the filing of this action was made unilaterally by defendants without any inquiry, action, or expression of interest by the government, the disclosure was not part of an "administrative . . . investigation," and this action is not barred.

## III.

### Rule 9(b)

 Defendants alternatively argue that Mr. Lockhart has failed to allege fraud with particularity as required by Federal Rule of Civil Procedure 9(b).[5] It is settled that the particularity requirement applies to allegations of fraud in an action under the False Claims Act. *See, e.g., United States ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1308–10 (11th Cir.2002).

The complaint in the case at bar sets forth in detail the requirement for testing and what was not done. The complaint also alleges with particularity the nature of the fraud: defendants manufactured propellant and delivered it to the government without disclosing that it had not been properly tested as required by the govern-

ing contracts. And finally, the complaint alleges with specificity how Mr. Lockhart knows all of this: he was the person who would have performed the tests but who, at the instruction of his supervisors, did not.

A line of Eleventh Circuit cases addresses the sufficiency of qui tam complaints. *Compare United States ex rel. Atkins v. McInteer,* 470 F.3d 1350 (11th Cir.2006) (holding insufficient a complaint filed by a physician relator who saw progress notes of medical treatment by others and alleged they were engaged in fraud; the relator saw no actual billings and had no actual knowledge of claims submitted to the government); *Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1012–14 (11th Cir.2005) (holding insufficient a complaint by a relator salesman of certain home health care equipment and services against numerous defendants, including two for whom the relator had worked, alleging, often on "information and belief," that defendants were engaged in fraudulent medicare billing; the complaint gave no "underlying basis" for the relator's assertions); *and United States ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1311–15 (11th Cir.2002) (holding insufficient a complaint by a relator—an employee of a competitor of the defendant—alleging that the defendant had performed unnecessary laboratory tests and otherwise had engaged in improper billing with respect to medicare and medicaid beneficiaries in long term care facilities; the complaint gave no information on the dates or amounts of any claims that were actually submitted and apparently cited as a basis of the relator's

---

*Inc.,* 74 F.Supp.2d 1201, 1208 (M.D.Fla.1999) ("By precluding suits based upon specific sources, Congress sought to ensure that no qui tam relator could profit from information already in the *public domain.*") (emphasis added).

**5.** Rule 9(b) provides: "Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

knowledge only his conversations with two named employees of the defendant), *with* *Hill v. Morehouse Med. Assocs., Inc.,* No. 02–14429, 2003 WL 22019936, at *4 (11th Cir. Aug. 15, 2003) (upholding a complaint by a relator who worked in defendant's billing department and alleged both personal knowledge and a significant factual basis for fraud allegations).

The most critical distinction in these cases may be the sufficiency of the complaint's allegation of a reliable basis for the relator's assertion that fraud has in fact occurred. In the cases in which the complaint was held deficient, the complaint left open the possibility that the relator was proceeding based on conjecture—that he did not have a reliable basis for the allegation of fraud. And the opinions seem to acknowledge the critical role of this factor. Thus, for example, in *Atkins,* the court said:

> [I]f Rule 9(b) is to be adhered to, some indicia of reliability must be given *in the complaint* to support the allegation of *an actual false claim* for payment being made to the Government.

*Atkins,* 470 F.3d at 1357 (quoting *Clausen,* 290 F.3d at 1311) (first emphasis by the court in *Atkins;* second emphasis by the court in *Clausen* ); *see also Corsello,* 428 F.3d at 1012.

Here the complaint gives ample indication of the reliability of Mr. Lockhart's claim. According to the complaint, Mr. Lockhart knows propellant was manufactured at the facility at which he worked for sale to the military, because he was actively engaged in the process. He knows required tests were not done, because it was Mr. Lockhart who, at the instruction of his supervisors, did not perform the tests. This complaint alleges with adequate particularity both the substance of the fraud and the requisite reliable basis for Mr. Lockhart's knowledge of it. Indeed, Mr. Lockhart's personal participation puts this complaint on a markedly higher level than any of the Eleventh Circuit cases in which a qui tam complaint was held deficient.

To be sure, this complaint does not give dates or amounts of deliveries or payments. The fraud, though, was the failure to test and the failure to disclose the failure to test. One cannot give the date of an event that did not happen, or identify the person who made a disclosure that was not made. The complaint specifically identifies the tests that were not conducted, and gives precise and credible information on how Mr. Lockhart knows what he alleges. This is sufficient to satisfy Rule 9(b).

This result makes sense. If Mr. Lockhart's allegations are true, then this is the very kind of situation for which Congress adopted the False Claims Act. Mr. Lockhart—an insider with reliable knowledge of serious wrongdoing, precisely the kind of person the statute is designed to motivate to file an action of this nature—has said all one could expect or demand. It would be ironic indeed if a person with reliable knowledge that an arms supplier has defrauded the military could not bring a qui tam action. This is, after all, very close to the kind of wrongdoing that led President Lincoln to seek adoption of the False Claims Act in the first place. *See United States ex rel. Williams v. NEC Corp.,* 931 F.2d 1493, 1496–97 (11th Cir. 1991). The complaint will not be dismissed for lack of particularity.

## IV.

### Statute of Limitations

Defendants argue that many of Mr. Lockhart's allegations are barred by the statute of limitations. More specifically, defendants assert that because defendant Olin Corporation sold any interest in the facility in 1996, Mr. Lockhart's claims against Olin are barred.

██ A motion to dismiss for failure to state a claim should be granted only if it appears to a certainty that the plaintiff would be unable to recover under any set of facts that could be proved in support of the complaint. *See, e.g., Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1484 (11th Cir. 1994). Nothing on the face of the complaint in the case at bar establishes that the claims are barred by the statute of limitations as against any defendant, including Olin. Dismissal on this basis thus would be inappropriate.

This does not mean, however, that the statute of limitations issue cannot be promptly determined. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168–69, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (reversing dismissal of complaint but adding, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later").[6]

## V.

### Conclusion

Mr. Lockhart has alleged personal knowledge of fraud in military contracting—a paradigmatic qui tam claim. One cannot know, based on this record, whether the allegations are well founded. The complaint ought not, however, be dismissed. Accordingly,

IT IS ORDERED:

Defendants' motion to dismiss (document 23) is DENIED.

---

**6.** Mr. Lockhart's response to the motion to dismiss states that if he confirms that Olin divested its interest in the facility at issue in 1996, he will move for voluntary dismissal of his claims against Olin. The parties should cooperate in an effort to achieve a just, speedy, and inexpensive determination of this and any other easily resolved issues.